

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 1 2 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Jan 12, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CYNTHIA L. AIKEN, | ) | No. 92631-0 |
| | ) | |
| Respondent, | ) | En Banc |
| | ) | |
| v. | ) | Filed    JAN 1 2 2017 |
| | ) | |
| DAVID W. AIKEN, | ) | |
| | ) | |
| Petitioner. | ) | |

GONZÁLEZ, J.—Trial courts must make difficult decisions when competing interests clash. In this case, a mother sought an emergency protection order to keep her soon-to-be ex-husband away from her and their children because, she alleged, he had abused them. The father denied the allegations and sought to cross-examine one of the daughters about her claim that he had repeatedly tried to suffocate her, among other things. Evidence was presented that the daughter was suicidal, was unable to confront her father, and would be significantly traumatized by this cross-examination. We must decide whether the father had a constitutional or statutory right to question his minor daughter in court before the protection

order could be issued. Finding under the facts of this case that he did not, we affirm.

BACKGROUND

Shortly before Thanksgiving in 2014, R.A. took an overdose of prescription medication in part to avoid visiting her father, David Aiken. Fourteen-year-old R.A. told a social worker that she attempted self-harm a year earlier and revealed that her father had been "verbally and physically abusive to her and her sisters." Clerk's Papers (CP) at 253-54. R.A. was taken to the hospital, and her counselor reported these allegations to Child Protective Services.

In 2013, R.A.'s parents, David and Cynthia Aiken, had agreed to dissolve their marriage. Since approximately February 2014, R.A. had been seeing a counselor and a psychiatrist for depression, posttraumatic stress disorder, and suicidal ideation. R.A. told her counselor that her father had often called her names. The record suggests that R.A. was too afraid of her father to be honest about her feelings around him; she would always try to act or say things "just right" to "avoid his wrath." Sealed Clerk's Papers (SCP) at 446.

Strikingly, R.A. reported that her father "trie[d] to suffocate her" and had been doing it for years. SCP at 392. According to R.A., David[1] would hide under

---

[1] Because Cynthia and David Aiken shared a surname during the relevant period for this case, we refer to them by their first names. We intend no disrespect.

pillows, "act dead," and jump up to scare her. *Id.* He would put her under the pillows and lay on them, making her feel like she was suffocating. R.A. felt claustrophobic and would panic at this. R.A. stated that David did this to her younger sisters as well.

On November 24, 2014, Cynthia sought an ex parte domestic violence protection order on behalf of herself and her three daughters against David. Cynthia presented a verified petition containing her declaration and counseling records from her children as evidence. The petition stated that R.A.'s self-harm stemmed from her fear of spending time with her father, and his past actions "'pretend[ing]' to suffocate her" and history of domestic violence against R.A., her sisters, and her mother. CP at 253-54.

The commissioner granted the emergency protection order on a temporary basis pending a full hearing. This order was later modified to allow R.A.'s younger sisters to visit their father and to otherwise follow the dissolution parenting plan. Dissatisfied, David moved for a full testimonial hearing with cross-examination of R.A. Cynthia objected, contending that R.A. would be traumatized by cross-examination and that the request itself was further evidence of David's abusive nature. David's requests for a full evidentiary hearing and to depose or subpoena R.A. were denied, and the commissioner set a hearing on the motions. After the hearing, the commissioner issued a one-year protective order

3

allowing David some contact with R.A. and restraining him from causing harm, injury, or harassment, subject to future orders in the dissolution action.

The day of the commissioner's ruling, perhaps coincidentally, R.A. again attempted suicide. Based on R.A.'s continued self-harm, Cynthia moved for and the court granted reconsideration of the order, including language that restrained David's contact with R.A., excluding him from visiting her at home and school and from coming within 100 yards of either. The modified order was still "subject to future orders in a dissolution or paternity action." CP at 18-19. The final order was effective until February 3, 2016.

David appealed. Among other things, David argued that his due process rights were violated when he was denied a full testimonial hearing with the right to cross-examine his child. *Aiken v. Aiken*, No. 73129-7-I, slip op. at 4 (Wash. Ct. App. Nov. 9, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/731297.pdf. The Court of Appeals rejected his argument, concluding that under *Gourley v. Gourley*, 158 Wn.2d 460, 145 P.3d 1185 (2006) (plurality opinion), the trial court's refusal to allow cross-examination of R.A. did not violate David's due process rights. *Id.* at 6. The court noted that "ample evidence" was presented to the trial court, which included the guardian ad litem's (GAL) report, to "corroborate that R.A. twice attempted suicide or self-harm due to fear of visitation with her father." *Id.* at 8. Therefore,

4

it concluded, David received due process protection and cross-examination was not necessary. *Id.* Cynthia was awarded attorney fees on appeal. *Id.* at 11 (citing RCW 26.50.060(1)(g); RAP 18.1; RAP 14.1-14.6). David then filed a petition for review, which this court granted. *Aiken v. Aiken*, 185 Wn.2d 1017, 369 P.3d 501 (2016).

ANALYSIS

David argues he had a right to cross-examine R.A. He substantially renews the arguments we previously considered in *Gourley*. We take this opportunity to clarify the ultimate holding of *Gourley*. While individual circumstances may warrant the cross-examination and live testimony of child witnesses under due process principles before a domestic violence protection order can be issued, there is no statutory right to either under chapter 26.50 RCW. We leave the decision whether to allow cross-examination in domestic violence protection order hearings to the sound discretion of a commissioner or trial court judge subject to the normal provision for review or revision. We also affirm the attorney fees award to Cynthia.

I.     DOMESTIC VIOLENCE PROTECTION ORDER PROCEEDINGS

Chapter 26.50 RCW governs domestic violence protection order proceedings. A protection order can be sought on the basis of "sexual assault of one family or household member by another" or "the infliction of fear of imminent

5

physical harm . . . between family or household members." RCW 26.50.010(3)(b), (a). A person may petition for protection on behalf of minor household members. RCW 26.50.020(1). Protection order proceedings are designed to provide emergency relief to domestic violence victims and their children. Because many victims are unable to retain counsel, the system is designed for use by pro se litigants. *See* RCW 26.50.035; *In re Marriage of Barone,* 100 Wn. App. 241, 247, 996 P.2d 654 (2000).

Safeguards for both those seeking protective orders and those subject to them are built into chapter 26.50 RCW. The petitioner must allege domestic violence by an affidavit under oath, stating specific facts and circumstances from which relief is sought. RCW 26.50.030(1). The court must order a hearing within 14 or 24 days upon receipt of the petition, depending on the type of service. RCW 26.50.050. The respondent must be served at least five days before the hearing. RCW 26.50.050. But where the petition alleges that "irreparable injury" could occur, the court may grant an "ex parte temporary order for protection, pending a full hearing." RCW 26.50.070(1). The ex parte temporary order generally may not exceed 14 days, but it can be continued if the hearing is continued. RCW 26.50.070(4). After this hearing, the court may issue a protection order excluding the respondent from a dwelling, prohibiting the respondent from coming within a certain distance from the petitioner or a minor child, restraining the respondent

6

from having any contact with the petitioner or minor child, and granting other relief as appropriate. *See* RCW 26.50.060(1). Where a protection order restrains an individual from contacting his or her minor children, the restraint must be for a fixed period not to exceed one year, renewable after another hearing. RCW 26.50.060(2).

II.    *GOURLEY V. GOURLEY*

Whether a respondent in a domestic violence protection order proceeding is entitled to cross-examine a child witness was explored in *Gourley*, which resulted in five opinions, none garnering more than four signatures. Six justices, however, agreed that due process may require cross-examination, but that Gourley had not shown it was necessary in his case. *Gourley*, 158 Wn.2d at 470 (lead opinion of J.M. Johnson, J.), 471 (Chambers, J., concurring), 472 (Quinn-Brintnall, J.P.T., concurring).[2]

III.    CROSS-EXAMINATION

David does not argue that chapter 26.50 RCW is facially unconstitutional. He instead contends that the Court of Appeals misapplied *Gourley* and that his due process rights were violated because he was not allowed to cross-examine R.A.

---

[2] David contends eight justices in *Gourley* agreed that due process "requires" a testimonial hearing and opportunity to cross-examine witnesses about disputed facts. Pet'r's Suppl. Br. at 1-2. This point is not well taken. At most, three justices found due process to require a live hearing and cross-examination. *See Gourley*, 158 Wn.2d at 471 (Madsen, J., concurring), 483 (Sanders, J., dissenting).

Due to conflicting evidence in the record before the trial court, David argues that he should have been granted a hearing with testimony and cross-examination to determine what was alleged and when the allegations occurred.[3] As in *Gourley*, we hold that chapter 26.50 RCW does not require a trial judge to allow live testimony or cross-examination in every protective order proceeding. Instead, whether live testimony or cross-examination is required will turn on the *Mathews* balancing test. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

A. STATUTORY RIGHT TO CROSS-EXAMINATION

Although David does not expressly argue that he has a statutory right under chapter 26.50 RCW's "full hearing" language, he asks this court to "clearly set forth in a unanimous opinion that a 'full hearing' includes the right to cross-examine adverse witnesses." Pet'r's Suppl. Br. at 3. We take this occasion to clarify the requirements of the chapter.

---

[3] In his petition for review to this court, David asked us to examine the proper evidentiary standard for protection orders that restrain a parent from his or her child. David's appellant brief to the Court of Appeals argued that due to the substantial liberty interests involved in his case (right to care for one's child, freedom of movement, and freedom against social stigma), a preponderance of the evidence is insufficient. However, his petition for review does not raise this as an issue and merely argues, in passing and without citation to authority, that the preponderance of the evidence standard should be raised to clear, cogent, and convincing. Furthermore, David does not specifically designate this issue for review. Absent argument or authority in support, we decline to address this issue. RAP 10.3(a)(6) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record); *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (citing *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.3d 796 (1986)).

The meaning of a statute is a question of law reviewed de novo. *State v. Ammons*, 136 Wn.2d 453, 456, 963 P.2d 812 (1998). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10 43 P.3d 4 (2002). The term "full hearing" is not defined in chapter 26.50 RCW, but it is used twice. When the term is used, it is juxtaposed against the "ex parte" hearing necessary for a temporary protection order. RCW 26.50.020(5), .070(1), (4).[4] First, it is used in the statute concerning the jurisdiction of the district and municipal courts in protection order proceedings. RCW 26.50.020(5). This provision explains that where the district or municipal court jurisdiction is limited to issuance of a temporary order, the court must "set the *full hearing* provided for in RCW 26.50.050 in superior court and transfer the case." *Id.* (emphasis added). Second, RCW 26.50.070(1) explains that where appropriate, the court can grant an ex parte temporary order for protection "pending a full hearing." "A full hearing, as provided in this chapter, shall be set for not later than fourteen days from the issuance of the temporary order . . . ." RCW 26.50.070(4).

---

[4] The *Black's Law Dictionary* definition of "full hearing" states that a full hearing requires notice and ample opportunity to present evidence and argument, but it does not mention cross-examination. BLACK'S LAW DICTIONARY 837 (10th ed. 2014).

9

Neither RCW 26.50.050 nor any other section of the statute defines the terms "full hearing" or explains the procedural form a hearing must take. RCW 26.50.050 allows a party to attend a hearing via telephone to accommodate a disability or, in extreme cases, to prevent further domestic violence. That section also sets forth service requirements. It does not require that the judge take testimony. *See* RCW 26.50.050. Instead, it contemplates that both sides will be able to offer appropriate argument and evidence within the proper discretion of the trial court. We conclude that there is no statutory right to cross-examine a minor in a protection order proceeding.

B. DUE PROCESS

David primarily argues that his due process rights were violated when the court commissioner granted the protection order based solely on documentary evidence. Whether David had a due process right to cross-examine R.A. is a question of law we review de novo. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003) (citing *Weden v. San Juan County*, 135 Wn.2d 678, 693, 958 P.2d 273 (1998)).

As the *Gourley* court recognized, chapter 26.50 RCW provides several procedural protections:

> (1) a petition to the court, accompanied by an affidavit setting forth facts under oath; (2) notice to the respondent within five days of the hearing; (3) a hearing before a judicial officer where the petitioner and respondent may testify; (4) a written order; (5) the opportunity to move

for revision in superior court; (6) the opportunity to appeal; and (7) a one-year limitation on the protection order if it restrains the respondent from contacting [his or her] minor children.

*Gourley*, 158 Wn.2d at 468-69 (citing ch. 26.50 RCW; *State v. Karas,* 108 Wn. App. 692, 699-700, 32 P.3d 1016 (2001)).

Due process may require cross-examination even in a civil proceeding where the confrontation clause is not at issue. *In re Det. of Brock,* 126 Wn. App. 957, 963, 110 P.3d 791 (2005); *see also State v. Dahl,* 139 Wn.2d 678, 990 P.2d 396 (1999). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews,* 424 U.S. at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Due process is a flexible concept; the level of procedural protection varies based on circumstance. *Id.* at 334. In evaluating the process due in a particular situation, we consider (1) the private interest impacted by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government interest, including the additional burden that added procedural safeguards would entail. *Id.* at 335.

*Gourley* and *Mathews* resolve the due process argument here. The first *Mathews* factor weighs in David's favor. As in *Gourley*, David has a fundamental liberty interest to make decisions regarding the care, custody, and control of his

11

daughter. 158 Wn.2d at 468 (citing *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion)). Also like *Gourley*, David was deprived of this interest only temporarily—he was restrained by the protection order for one year and the modified order was subject to the dissolution action. *Id.*; *see also Mathews*, 424 U.S. at 341 (quoting *Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S. Ct. 533, 42 L. Ed. 2d 521 (1975) ("possible length of wrongful deprivation of" interest at stake "is an important factor in assessing the impact of" the government action)).[5]

Also as in *Gourley*, the third *Mathews* factor weighs in favor of affirming the trial court. The government has an equally compelling interest in protecting children and preventing domestic violence or abuse. *See Gourley*, 158 Wn.2d at 468 (citing RCW 26.50.035's findings; LAWS OF 1993, ch. 350, § 1);[6] *In re*

---

[5] Washington has not necessarily *required* cross-examination of the minor child in instances where a parent's contact with a minor child could be restricted. *See In re Dependency of H.W.*, 70 Wn. App. 552, 558, 854 P.2d 1100 (1993) (noting that due process was satisfied for the purpose of a temporary shelter care hearing where the accused parent had access to statements made by the children). Moreover, where the result of a hearing would only temporarily restrict a purportedly abusive parent's access to a minor child, less process is due than termination proceedings. *See id.* at 556-57 (considering the "obvious need for prompt and decisive action in order to protect a child from possible abuse and neglect"); *see also, In re Parentage of Jannot*, 149 Wn.2d 123, 126-27, 65 P.3d 664 (2003) (recognizing that petitions to modify a parenting plan are initially evaluated based only on documentary evidence).

[6]     [D]omestic violence is a problem of immense proportions affecting individuals as well as communities. . . . [It is] at the core of other major social problems including child abuse, crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse. . . . [It costs] lives as well as millions of dollars each year . . . for health care, absence from work, and services to children.

LAWS OF 1993, ch. 350, § 1.

12

*Dependency of H.W.*, 70 Wn. App. 552, 555, 854 P.2d 1100 (1993) ("equally compelling interest in protecting the physical, mental and emotional health of the children").

Turning to the second *Mathews* factor, we note that even when as fundamental a liberty interest as physical liberty is at stake, the United States Supreme Court found that substitutes for live testimony such as affidavits, depositions, and documentary evidence may be sufficient. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). This court has expressed a preference, but not a requirement, for live testimony and cross-examination of child victims. *See Gourley*, 158 Wn.2d at 470 ("live testimony and cross-examination might be appropriate in other cases"); *In re Marriage of Rideout*, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003) ("where an outcome determinative credibility issue is before the court in a [family law related] contempt proceeding, it *may often be preferable* for the superior court judge or commissioner to hear live testimony of the parties or other witnesses, particularly where the presentation of live testimony is requested" (emphasis added)).

*Mathews*'s guarantee that a person must be heard at a meaningful time and in a meaningful manner is protected by the procedures in chapter 26.50 RCW. The chapter provides for a domestic violation protection petition supported by an affidavit, notice, a hearing before a judicial officer where parties may testify, a

13

written order, the opportunity to revise the written order, the opportunity to appeal, and a one-year limitation on the order. These procedures were followed in this protection order hearing. And, as occurred in *Gourley*, David was permitted to depose his then-wife Cynthia. Moreover, the GAL appointed in the Aikens' divorce case interviewed the children and their counselors, filing a report as evidence in the protection order proceeding.

Under Snohomish County Local Court Rule (SCLCR) 59, the commissioner conducted a special set hearing that allowed argument from both parties and considered documentary evidence. SCLCR 59(e)(3)(B). Substantial evidence was presented to the commissioner in this hearing, including Cynthia's declaration; her deposition; the GAL report; and medical records, including those of R.A.'s two visits to the emergency room and psychological records. Although David did not admit to any wrongdoing (unlike the father in *Gourley*, 158 Wn.2d at 470), the evidence in this case reflects R.A.'s tangible fear of her father—fear he may suffocate her, fear of his unpredictable temper, and fear from his history of domestic abuse—a fear so consuming that R.A. attempted to harm herself to avoid contact with him.

It was well within the sound discretion of the commissioner to decide that cross-examination in this case was unnecessary and would likely have harmed R.A. The neutral GAL's report and the documentary evidence in the protection

14

order hearing evinced sufficient facts of abuse by David against R.A. Cynthia's petition for the protection order contained R.A.'s hospital records from her attempted suicide and counseling records detailing R.A.'s suicidal ideation, depression, and posttraumatic stress disorder. David asserted that R.A. probably overdosed because she broke up with her boyfriend. CP at 211 ("sometime during the week of [R.A.'s first overdose], [she] apparently broke up with her boyfriend"). However, the record indicates that R.A. tried to hurt herself "'so [she] would collapse and [she] wouldn't have to go with [her] Dad.'" CP at 253. R.A. also revealed to her school counselor that her father held "her down and 'pretends' to suffocate her[, making] her feel very uncomfortable and scared." CP at 254. The abundant independent evidence before the court supports the commissioner's decision to deny cross-examination of the vulnerable child.

Cross-examination is a powerful instrument in eliciting truth or discovering error in statements. *State v. Eddon*, 8 Wash. 292, 301, 36 P. 139 (1894). However, cross-examination may also be used for purposes other than truth seeking. "The nature and purpose of witness examination, however, are to elicit honest testimony, not fearful responses, and to procure the truth, not cause intimidation." *State v. Foster*, 135 Wn.2d 441, 465, 957 P.2d 712 (1998) (plurality opinion). Here, evidence before the trial court demonstrated that R.A. was too afraid of her father to be honest about her feelings. In fact, she would try to act or say things "just

15

right" to "avoid his wrath." SCP at 446. R.A. told her counselor that her group therapy sessions with her father were "unhelpful" because she was "afraid to talk in front of" David. SCP at 263. All the Aiken children were "extreme[ly] cautio[us] around [their] father," they did not "express [their] opinions," they did not "disagree," and they were even "cautious with their facial expressions to avoid" making him angry. SCP at 370. It is reasonable to conclude that R.A. would have provided fearful responses under cross-examination and that she would not have revealed any additional information than that already in evidence.

As with *Gourley*, we conclude that it was not an abuse of discretion for the commissioner to deny David's request to cross-examine R.A. Under *Mathews*, David's due process rights were not violated. As part of the *Mathews* balancing test, trial court judges and commissioners should specifically weigh the likely value of cross-examination against the potential damage that testifying may have on the specific child. A bright line rule prohibiting cross-examination or live testimony in protective order hearings is inappropriate, as it is the province of the trial judge or commissioner to grant or deny cross-examination based on individualized inquiries into the facts of the instant case.

IV. ATTORNEY FEES

Finally, David contends that the Court of Appeals erred in awarding Cynthia attorney fees under RCW 26.50.060(1)(g) because her underlying petition failed to

16

request them. He cites RCW 26.09.140, the divorce proceedings statute, in support. David makes no argument why the Court of Appeals' award of attorney fees was improper, stating only that RCW 26.09.140 and RCW 26.50.060(1)(g) contain different language. While Cynthia did not originally seek fees in the underlying action, she was awarded costs and attorney fees pursuant to RCW 26.50.060(1)(g) and appellate fees and costs pursuant to RAP 14.1 through 14.6 and RAP 18.1. An appellate court may award attorney fees where allowed by statute, rule, or contract. *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003). If attorney fees are allowable at trial, the prevailing party may recover fees on appeal. RAP 18.1. Additionally, this court upheld attorney fees awarded on appeal in *Gourley*. 158 Wn.2d at 470.

Because David's due process rights were not violated in this case, Cynthia is the prevailing party and attorney fees were properly rewarded at the Court of Appeals. Furthermore, we grant her request for fees here.

CONCLUSION

While circumstances and due process principles may warrant cross-examination and live testimony of minors in some domestic violence protection order hearings, there is no statutory right to either under chapter 26.50 RCW. In this case, we hold that the Court of Appeals properly interpreted *Gourley* and that

17

it was not an abuse of discretion for the court commissioner to deny live testimony or cross-examination.  We affirm.

*Aiken v. Aiken*, No. 92631-0

González, J.

WE CONCUR:

Stephens, J.

Owens, J.

Gordon McCloud, J.

Fairhurst, C.J.

Yu, J.

19

*Aiken v. Aiken*

No. 92631-0

MADSEN, J. (concurring in result)—I adhere to the view expressed in my concurrence in *Gourley v. Gourley*, 158 Wn.2d 460, 471, 145 P.3d 1185 (2006), concurred in by Justice Fairhurst, and by Justice Chambers in a separate concurrence, that a "'full hearing'" under chapter 26.50 RCW includes the right to cross-examine witnesses and that "due process requires the opportunity to cross-examine in a full hearing for a one-year order of protection within the limitations of the applicable evidence rules." *See also id.* at 477 (Sanders, J., dissenting).

As the dissent in *Gourley* pointed out, "Courts have long recognized cross-examination is 'beyond any doubt the greatest legal engine ever invented for the discovery of truth.' 5 JOHN HENRY WIGMORE, A TREATISE ON THE ANGLO-AMERICAN SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW § 1367 (3d ed. 1940). *See also Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) ('In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.'); *In re* [*Marriage of*] *Rideout*, 150 Wn.2d [337,] 352[, 77 P.3d 1174 (2003)] ('it may often be preferable for the

superior court judge or commissioner to hear live testimony of the parties or other witnesses')." *Id.* at 480 (Sanders, J., dissenting). Thus, cross-examination is an important tool for testing truth, whether in a criminal or a civil proceeding.

In balancing the concerns in a civil protection order proceeding for purposes of deciding what due process requires, the majority points out that the duration of a domestic violence protection order is only one year and is subject to modification. But, our legislature has tacitly recognized that a year in a child's life is much longer in terms of impact on the parent-child relationship. *See* RCW 13.34.020 (providing that "[t]he right of a child to basic nurturing includes . . . a speedy resolution of any proceeding under this chapter"). This court has also acknowledged the impact of time frames on small children in this context. See *In re Welfare of Hall*, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983) (quoting Joseph Goldstein, Anna Freud & Albert J. Solnit, *Beyond the Best Interests of the Child* 43 (1973)), for the proposition that "'[t]hree months may not be a long time for an adult decisionmaker. For a young child it may be forever.'" Moreover, the consequences of a protection are far reaching and, if violated, may lead to criminal charges against a parent. And, although there is no reason to believe that Cynthia Aiken sought advantage through the use of the protection order process, there are certainly cases where that may be true, and in such a case, cross-examination would be especially important for finding the truth.

Nevertheless, I concur in the result of the majority. Here, David Aiken complains that he was denied the right to cross-examine his daughter. But Cynthia Aiken was the

2

petitioning party, not the child. Presumably, Cynthia Aiken was available for cross-examination. Under the rules of evidence, the trial court has discretion to limit witnesses for a variety of reasons. On this record, the trial court did not abuse its discretion in declining to permit the child to be called as a witness and therefore she was not subject to cross-examination. The medical records from the child's counselor and psychiatrist regarding the child's mental health, which were properly admitted, supported the trial court's decision granting the protection order in this case.

I concur in the result.

No 92631-0
(Madsen,    J., concurring in result)

Madsen, J.

Wiggins, J.