
FILED
COURT OF APPEALS DIV.I
STATE OF WASHINGTON

2018 JUL 23 AM 10: 16

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GAM THI HONG NGO,

        Respondent,

    v.

THOAI GIA PHAN,

        Appellant.

No. 76767-4- I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 23, 2018

LEACH, J. — Thoai Gia Phan appeals an order on revision granting Gam Thi Hong Ngo's petition for a domestic violence protection order (DVPO) against him. He claims that on revision the superior court used the wrong standard of review and denied him due process. We disagree and affirm.

## FACTS

Phan and Ngo married in Vietnam in 2015. They have no children. In 2016, Phan brought Ngo to Seattle to live with him and his father.

In September 2016, Phan consulted a divorce lawyer while Ngo was temporarily back in Vietnam. According to Phan, his father warned Ngo that she needed to return to the United States because a divorce might affect her immigration status.

No. 76767-4/2

In October 2016, shortly after Ngo returned from Vietnam, Seattle police responded to a 911 call from Ngo. She was "crying hysterically" and said the following through an interpreter,

> She stated that PHAN has pushed her down towards the ground and has made threats to take away her Green Card, so that she would be forced to go back to Vietnam when she returned back to the US. NGO stated that she never called 911 to report those incidents, because of her limited English.
>
> NGO stated that today, she and PHAN got into a verbal argument and that PHAN yelled and screamed at her telling her that when he comes back home after work, if she is still here (at the house) he would kill her. She stated that she feared for her safety and believes that he could car[ry] out his threats to kill her.

Phan's father told police he heard Phan screaming and threatening to kill Ngo. Phan told police that the couple had not been getting along but said that "nothing physical occurred" and "they were only arguing." Police arrested Phan and charged him with domestic violence harassment.

On November 29, 2016, Ngo filed an amended petition in superior court for a DVPO against Phan. Under penalty of perjury, Ngo described Phan's October 2016 threats to kill her:

> [My husband] brought me to the U.S. in July 2016. Since that time, my husband has called me names and insulted me many times. He would get drunk and come home at 2 or 3 a.m. and call me a prostitute, or worse than a prostitute. He would say go back to Vietnam.
>
> The worst incident was about a month after I arrived. We were in the car, he insulted me and said, "you're not my wife." He stopped the car and said Get Out. I got out, but he got out and followed me on foot. He was yelling at me, cursing with the "F" word. He got close to me, and pushed

me into a nearby fence. My shoulder was hurt, dislocated. A stranger saw us, and tried to help me. I was afraid.

Ngo also stated, "I am afraid he will come after me. He is being charged in a criminal case and I am in hiding from him." She believed Phan was "mad about the criminal case" and being arrested.

Phan's counsel filed a response denying Ngo's allegations. Counsel alleged that Ngo did not love Phan and only married him to get to the United States. Counsel further alleged that Ngo and Phan's father were working together to stop the divorce proceedings. Counsel attached a copy of the October 2016 police report to his response. Phan did not file a responsive declaration.

A superior court commissioner issued a temporary protection order and set the matter for hearing on February 6, 2017.

In January 2017, Phan's counsel submitted an amended response. Counsel noted that a no-contact order already existed and argued that Ngo had contradicted some of the details in her amended petition during a recent defense interview. Counsel alleged that, contrary to her previous assertions, Ngo was not hiding from Phan. Instead, she was posting her activities and whereabouts daily on Facebook. Counsel further alleged that while Ngo previously said a stranger tried to help her after Phan assaulted her, in the defense interview she said "there was nobody else to witness." But nothing in the amended response or attached interview transcript indicates that Ngo contradicted the substance of her prior domestic violence allegations.

The DVPO hearing scheduled for February 6, 2017, did not occur due to snow. The following day, only Ngo appeared in court, and the court granted her petition "by default."

Phan asked for reconsideration. He explained his absence from the prior hearing and requested a new hearing. The court granted reconsideration and held a full evidentiary hearing on March 6, 2017. Ngo testified that Phan "threaten to kill me, and I am very scared. There are time he using force on me. Shove me and dislocate my shoulder." Later, she testified that on October 6, 2016, "[H]e kick me out of the house and . . . if I wasn't get out, then he will kill me. He will kill me." Ngo requested a five-year protection order.

Phan did not testify, but his counsel told the court that Phan denied the accusations. Counsel noted that the only other person with knowledge of the alleged threats and assaults was Phan's father and that he had not appeared to testify. Counsel argued that Phan's father also lacked credibility due to his close relationship with, and financial support of, Ngo. Counsel requested a protection order to stop Ngo from harassing Phan. According to counsel, Ngo was using Phan's father to persuade Phan to drop the divorce in exchange for her recanting her allegations in the criminal proceeding.

When the court asked about the criminal case against Phan, Phan's counsel said that case would be dismissed in one year if Phan followed certain conditions, including

No. 76767-4/5

a one-year no-contact order.[1] The commissioner then gave his oral ruling, stating in part as follows:

> THE COURT: [I]n the divorce proceeding you can ask for a restraining order. **You do have a criminal no contact to 2018. I think the testimony is conflictual**, and I'm going to dismiss your [default] protection [order]. But I'm not aligning the parties. There is no evidence here that she poses any threat to him. **There is a question he poses any threat to her. However, he has agreed to a no contact order, and it keeps him away from her,** and if he violates that order the subject is immediate arrest and criminal prosecution.
>
>         . . . .
>
> THE COURT: So—**so you have protection until then.** Court's going to dismiss the [default protection] order.

(Emphasis added.)

Ngo asked a superior court judge to revise the commissioner's ruling. Shortly before the hearing, Phan filed an "Affidavit regarding all documents submitted to the Court" in which he acknowledged his failure to previously file any sworn statements with his various filings. He claimed this was "an oversight on the part of my counsel" and swore that all allegations in the prior filings were his and were reviewed and approved by him before filing.

On March 31, 2017, the superior court judge heard Ngo's revision request. The court stated it had reviewed the parties' filings and listened to a recording of the hearing

_____

[1] The court requested documents confirming the status of the criminal proceedings. The court then received, without objection, copies of the police report regarding the October 2016 incident and other documents from the criminal proceeding. These documents were formally filed with the court several days after the hearing. The police report is apparently the same report submitted with Phan's earlier response to the amended petition.

-5-

before the commissioner. Ngo's counsel recounted Ngo's testimony at the prior hearing and noted that Phan had not testified. Counsel also summarized Ngo's statements in the 2016 police report and pointed out that Phan had never provided a sworn statement addressing the allegations and evidence in the case.

Phan's counsel maintained that the standard of review on revision was whether the court commissioner's findings were supported by substantial evidence. Counsel stated in part,

> The Commissioner found that the Petitioner gave inconsistent testimony, and the Commissioner ruled that there was no preponderance of the evidence to grant the Petitioner a protection order. . . .
>
> In this case the Commissioner did not find by a preponderance of the evidence that the Petitioner's testimony was credible.

Ngo's counsel countered that the commissioner did not mention credibility and simply noted that the testimony was conflicting. Counsel also pointed out that the commissioner improperly considered Ngo's existing one-year no-contact order in the criminal case and the possibility that she could get a restraining order in the dissolution action.

The superior court revised the court commissioner's ruling and granted Ngo a two-year protection order. In its oral ruling, the court stated in part,

> What I heard the Commissioner say, . . . [h]e heard conflictual testimony. I'm not sure how he could have heard conflictual testimony, if he didn't hear anything from the Respondent. **I didn't hear him making any credibility determinations either.** It could have been that it was the recantation of the petition for the police. But, you know, this Commissioner is a very experienced domestic violence Commissioner. So I believe that he

would not have thought that in the context of a domestic violence case. Recantation is not unusual, and I know he knows that.

**So I'm not sure what he meant by conflictual testimony,** but the issue is whether or not at the March 6th hearing did the Petitioner provide sufficient evidence to establish by a preponderance of the evidence that the Respondent engaged in an act of domestic violence against her, specifically threats to kill or harm, and that she would be entitled to a protection order.

As I said, the Commissioner had the testimony of the Petitioner, and he had the police reports that counsel has gone over pretty much line by line in terms of what she told the police, and what the father-in-law told the police. He did, **the Commissioner, did say in addition to saying that he was not granting the order because of the conflictual testimony. He did say that you can ask for a restraining order in a divorce proceeding, and the Respondent has agreed to a no contact order. Agreed to a no contact order in the SOC, and a violation will subject him to arrest. So it seems clear to me that the Commissioner relied on the fact that there was a no contact order in the SOC case even though it expires in January. And that also the Commissioner thought in context of getting a dissolution that Petitioner can ask the Court for a restraining order.**

**RCW 26.50.025 provides that relief should not be denied on the grounds of relief is available in another action. So I believe it was error for the Commissioner to rely on the fact that other orders were available to her, and that he should have granted the protection order. Because the only evidence he had before him was her testimony, and the testimony, and the police reports.**

So I'm going to order the protection order be granted.

(Emphasis added.)

In its protection order, the court found that Phan "committed domestic violence as defined in RCW 26.50.010" and was "a credible threat to the physical safety of [Ngo]."

Phan appeals.

## STANDARD OF REVIEW

On a motion to revise, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the

commissioner.[2] The superior court "is not required to defer to the fact-finding discretion of the commissioner" but "is authorized to determine its own facts based on the record before the commissioner."[3] This is true even if the commissioner heard live testimony.[4]

On appeal, we review the superior court's ruling, not the commissioner's.[5] When reviewing the issuance of a protective order, we review any contested findings for substantial evidence, questions of law de novo, and the issuance and scope of the order for abuse of discretion.[6]

## ANALYSIS

### Deference to Commissioner's Findings

Phan challenges the superior court's revision of the commissioner's ruling that found Ngo's testimony "conflictual" and not credible. He claims the superior court had to defer to those findings and had "no authority to substitute its decision for that of the trial court, reassess the credibility of witnesses, or resolve conflicts in the evidence." He contends deference is particularly important when, as in this case, the commissioner heard live testimony. We disagree.

---

[2] State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004) (citing In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999)).

[3] In re Marriage of Dodd, 120 Wn. App. 638, 644-45, 86 P.3d 801 (2004).

[4] In re Marriage of Lyle, 199 Wn. App. 629, 632, 398 P.3d 1225 (2017) (citing Ramer, 151 Wn.2d at 113, 116-17).

[5] Ramer, 151 Wn.2d at 113; In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009); RCW 2.24.050.

[6] Trummel v. Mitchell, 156 Wn.2d 653, 668-69, 131 P.3d 305 (2006).

RCW 2.24.050 provides that when a superior court reviews a commissioner's ruling on a motion to revise, "**[a]ll of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. . . .** Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner." (Emphasis added.) The superior court reviews all findings of the commissioner de novo <u>regardless of whether the commissioner took live testimony or made credibility determinations</u>.[7] De novo review is particularly appropriate when, as here, the court on revision received and reviewed a recording of the live testimony before the commissioner. [8]

The superior court did not err in reviewing the commissioner's findings de novo and owed no deference to the commissioner's findings.

### Hearing and Testimony on Revision

Phan next contends the superior court erred by failing to conduct a hearing to determine credibility before revising the commissioner's ruling. Citing <u>In re Marriage of Griffin</u>,[9] he states,

---

[7] <u>Lyle</u>, 199 Wn. App. at 632 (citing <u>Ramer</u> and holding "de novo standard applied even when commissioner heard live testimony"); 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 3.13, at 42 (2d ed. 2009) (citing <u>Ramer</u> as holding that the superior court always reviews a commissioner's decision de novo "<u>regardless of the nature of the evidence considered by the commissioner</u>." (Emphasis added.)).

[8] Contrary to Phan's assertions, it is not clear that the commissioner made a credibility determination. The commissioner never mentioned "credibility" or "veracity" and instead focused on the <u>sufficiency</u> of Ngo's "conflictual" testimony. We also note that Ngo alleges, and Phan does not dispute, that the recording of the commissioner's hearing contained both audio and video.

[9] 114 Wn.2d 772, 779, 791 P.2d 519 (1990)

> [I]f the Superior Court suspects or has any doubts that the trial court was incorrect in its ruling . . . , then a hearing should be held, witnesses placed under oath, testimony taken, witnesses questioned, the demeanor and responses of the witnesses weighed, credibility measured, documentary evidence reviewed and the law applied . . . before a reversal of the Family Law Commissioner be rendered.

Nothing in Griffin or any other authority cited by Phan supports this statement. To the extent Phan cites these cases for the proposition that the standard of review on revision is abuse of discretion, he is wrong. The cases he cites address the standard of review that this court applies to lower court rulings. They do not address the standard a superior court applies on revision. For the reasons discussed above, the superior court's review was limited to the record produced at the commissioner's hearing regardless of whether the commissioner took live testimony or made credibility determinations.

## Due Process

Phan claims de novo review of the commissioner's decision violated his due process rights under the state and federal constitutions because "no witnesses were called to testify and cross-examine" and "he was not afforded an opportunity to cross examine Ms. Ngo." Recent decisions of this court and the Washington State Supreme Court control this claim.[10] Phan offers no persuasive basis to distinguish those decisions.

---

[10] Aiken v. Aiken, 187 Wn.2d 491, 503, 387 P.3d 680 (2017) (applying balancing test in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) and holding that commissioner's hearing on protection order without cross-examination did not violate due process and that the "guarantee that a person must be heard at a meaningful time and in a meaningful manner is protected by the procedures in chapter 26.50 RCW"); Gourley v. Gourley, 158 Wn.2d 460, 467-68, 145 P.3d 1185 (2006)

Phan's complaint that "he was not afforded an opportunity to cross examine Ngo" and that "no witnesses were placed under oath" at the revision hearing ignores the fact that these procedures were available at the commissioner's hearing. Ngo and Phan were both placed under oath at that hearing. Ngo testified, but Phan chose not to. Phan also chose not to cross-examine Ngo. Phan received all the procedural safeguards required by due process at the hearing before the commissioner. In addition, the superior court's review included a recording of the commissioner's hearing. There was no due process violation.

## Attorney Fees on Appeal

Citing RCW 26.50.060(1)(g) and RAP 18.1, Ngo requests an award of attorney fees on appeal. RCW 26.50.060(1)(g) authorizes the trial court in DVPO proceedings to require a respondent to pay administrative court costs and service fees incurred by the county or municipality "and to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." Ngo is represented by the Northwest Justice Project, a nonprofit legal services corporation. She is not paying for their services. But a nonprofit legal services corporation that wins an appeal for a party entitled to attorney fees is entitled to recover reasonable fees, even when its client has

---

(hearing before commissioner on DVPO satisfied due process and Mathews despite absence of live testimony and cross-examination); Smith v. Smith, 1 Wn. App. 2d 122, 142, 404 P.3d 101 (2017) (citing Aiken for proposition "that chapter 26.50 RCW, the DVPA [Domestic Violence Prevention Act], satisfies the respondent's constitutional right to due process").

No. 76767-4/12

not incurred any expenses in the litigation.[11]  And RAP 18.1 authorizes an award of fees to the prevailing party on appeal, if attorney fees are allowable to that party at trial.  We grant Ngo's request for fees, subject to compliance with RAP 18.1(d).

    Affirmed.

*Leach, J.*

WE CONCUR:

*Dwyer, J.*

*Appelwick, C.J.*

---

[11] Tofte v. Dep't of Soc. & Health Servs., 85 Wn.2d 161, 165, 531 P.2d 808 (1975).

-12-