# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

KAREN MICHELLE WOLD,

Respondent,

v.

SCOTT ALEXANDER HAMILTON,

Appellant.

No. 58766-1-II

UNPUBLISHED OPINION

PRICE, J. — Scott Alexander Hamilton appeals a domestic violence protection order (DVPO) protecting his wife, Karen Wold. He claims that the superior court abused its discretion when, prior to granting the DVPO to Wold, the superior court denied his motion to continue the hearing. He also claims that the denial of the continuance violated his due process rights. We affirm the superior court and award attorney fees to Wold.

## FACTS

In August 2023, Hamilton and Wold got into a physical altercation that led to law enforcement arresting Wold. Following this altercation, Hamilton and Wold each filed separate DVPO petitions against the other. While the proceedings were pending, Hamilton received a temporary protection order protecting him and his son from contact with Wold. After the proceedings were continued several times, the superior court heard both petitions on September 28, 2023.

During the hearing, each party presented testimony. During Hamilton's testimony, he asked the superior court if he could present documentary evidence related to his injuries from the

physical altercation with Wold.  But because this evidence had not been filed in advance of the hearing, Wold objected to its consideration.

Hamilton then asked the court for a continuance so that he could present this evidence, plus potentially additional items, including video evidence of the altercation.  He explained that he sought to present

> [e]vidence of injuries obtained on that evening.  Also a South Sound public records request for the 911 call regarding the assault.  I've also asked for body camera footage of the evening in question.  The four officers on the scene made the—made the arrest based on evidence that they witnessed and the statement from my seven-year-old child.

Verbatim Rep. of Proc. (VRP) at 6.

Wold opposed any continuance, arguing that "Hamilton ha[d] had every opportunity to file documents before [the hearing]" and that he had around a month to do so.  VRP at 6.  Wold also expressed concern over continuing the hearing further given that Hamilton had sole custody of their son.

The superior court, having already reviewed the previous submissions by the parties, denied Hamilton's oral request.  It explained to Hamilton:

> Well, sir, I'm not going [to] grant a continuance.  I've got real concerns about this case.  This case has been pending for quite some time, so we're going to go ahead and proceed.
>
> As I've indicated we would not consider a statement from the child that you have together, who's seven.  There's no ability for the Court to have video evidence.
>
> Sir, you certainly can provide me additional argument today, potentially with regard to those things that you want me to consider, and then counsel will have an oral opportunity to be able to respond.

VRP at 7.

2

The hearing proceeded. Hamilton testified first and gave lengthy testimony during which he alleged that Wold was the aggressor during their relationship. In response to questioning from the superior court, Hamilton admitted that he continued to send Wold text messages after he received a temporary protection order. He explained that through these texts he was merely keeping Wold "involved in what [their] son was doing" and that he was "encouraging her to get some form of help to deal with her alcoholism and her diabetes management as well as HRT replacement." VRP at 10.

When given her turn to testify, Wold contradicted many of the statements made by Hamilton. Wold's attorney further contended that Wold received "100 to 200 messages per day" from Hamilton that were

> various degrees of threats threatening to harm [her] career, threatening to sell their home, threatening to put her back in the jail, sending videos of their son, taunting her about how he's going to go find him a new mommy and how the child wants nothing to do with [Wold].

VRP at 15. Wold's attorney concluded by expressing concern for the physical safety of Wold's son given Hamilton's abusive behavior and his "obsession with weapons." VRP at 15.

Following Wold's testimony, the superior court allowed Hamilton to give rebuttal testimony. He denied many of Wold's accusations, including denying that his guns endangered their son in any way.

After hearing testimony from both parties, the superior court concluded that Hamilton, not Wold, was the aggressor in the relationship. As support for its conclusion, the superior court read into the record the content of about 20 messages that Hamilton admitted to sending Wold after he received a temporary protection order. For example, the superior court recited the following:

> Sleep blank well, crazy woman. Watch the blank video a thousand blank times. It's not going to change.
>
> Trying to save your relationship without having to completely blank destroy you.
>
> . . . .
>
> I look forward to you meeting my attorney. Ruthless. Not sure how much you can accomplish in prison, but I'm sure you'll have ample time to reflect, even share menopausal memories with the other inmates. I'm laughing.
>
> . . . .
>
> Knock, knock, not worth wasting my time over you. You're still in fantasy land. Reality's going to hit you when you squat and cot.

VRP at 20-21. The superior court explained that these were just some of the messages that Hamilton sent Wold and that he also sent messages to Wold's father and a friend with whom she was staying.

Following its recitation of the messages, the superior court denied Hamilton's DVPO against Wold and granted Wold's DVPO against Hamilton. The superior court addressed Hamilton directly:

> I do find that you have engaged in a[n] ongoing, excessive, controlling, demeaning, humiliating, pattern of coercive control against the petitioner in her case. Probably the worst I've seen in the 17 years I've been on the bench.

VRP at 22.

The next month, in October 2023, Hamilton appealed the superior court's order granting Wold's DVPO. He did not appeal the superior court's order denying his requested DVPO.

Two months after his appeal was commenced with the court of appeals, Hamilton attempted to file with the superior court a postjudgment motion to modify Wold's DVPO. Hamilton's motion was premised on a new argument, not previously made to the superior court,

4

that, in the course of the DVPO proceedings, Wold had violated her obligations under a contract, called a Form I-864. A Form I-864 contract is related to the marriage of a person from the United States and a person from a different country (Hamilton was a citizen of Australia).[1]

In his postjudgment motion, Hamilton alleged that Wold had cut off his access to their joint bank accounts. This, he alleged, was a violation of the Form I-864. Hamilton also argued that Wold should be sanctioned under CR 11 because of her "non-disclosure of a 'significant factor' to the trial [c]ourt." Clerk's Papers (CP) at 408. He contended that the superior court should modify its decision granting Wold's DVPO because Wold's non-disclosure of her obligations under Form I-864 were " 'such a significant factor, that keeping it from the Court, produced an unjust result.' " CP at 410.

In part due to the fact that Hamilton had already appealed its earlier order granting Wold's DVPO, the superior court denied Hamilton's postjudgment motion. The superior court also reasoned that it would not modify its order because Hamilton failed to meet the applicable standard and show that "he likely will not recommit acts of [domestic violence] against the Petitioner and/or that a substantial change has occurred." CP at 436. Hamilton did not appeal the denial of his postjudgment motion.

---

[1] This contract typically requires a family member, often the U.S. citizen spouse, to act as a sponsor. 8 U.S.C. § 1183a(1)(A); *see e.g. In re Marriage of Khan*, 182 Wn. App. 795, 332 P.3d 1016 (2014). A sponsor signing this contract is legally bound to ensure that their immigrant relative or spouse does not become a public charge and provide them with ongoing financial support. *Khan*, 182 Wn. App. at 799.

ANALYSIS

Hamilton argues that when the superior court denied his oral motion for a continuance that the superior court abused its discretion and violated his due process rights.[2] We disagree.

I. REQUEST FOR CONTINUANCE

A. NO ABUSE OF DISCRETION

We review a superior court's denial of a continuance under an abuse of discretion standard. *Scheib v. Crosby*, 160 Wn. App. 345, 350, 249 P.3d 184 (2011). An abuse of discretion occurs if the superior court's decision is manifestly unreasonable or based on untenable grounds. *In re Adoption of M.J.W.*, 8 Wn. App. 2d 906, 920, 438 P.3d 1244 (2019). "A ruling is based on untenable grounds or reasons if the trial court applies the wrong legal standard or relies on facts that are unsupported." *Id.*

DVPO hearings are "special proceedings" during which conflicting civil rules and rules of evidence do not apply. RCW 7.105.200(1), (8). The superior court is given discretion to "evaluate the needs and procedures best suited to individual hearings based on consideration of the totality of the circumstances, including disparities that may be apparent in the parties' resources and representation by counsel." RCW 7.105.200(1). When conducting a hearing, the superior court

---

[2] In his briefing, Hamilton also appears to make three additional requests: (1) for sanctions against Wold under CR 11, (2) for costs under RAP Title 14, and (3) for oral argument under RAP 11.2(a). We do not consider these requests. First, as an appellate court, we cannot impose CR 11 sanctions. *State v. A.W.*, 181 Wn. App. 400, 413, 326 P.3d 737 (2014). Second, unless Hamilton is requesting fees or expenses under RAP 18.1, requesting costs under RAP 14.1 separately by motion is unnecessary. *See* RAP 14.1 ("The appellate court determines costs in all cases after the filing of a decision terminating review . . . ."). Third, any request for oral argument must be made in a separate motion, it cannot be attached to a party's brief. *See* RAP 10.4 ("A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits.").

may consider "information provided in the sworn petition, live testimony of the parties should they choose to testify, and any additional sworn declarations." RCW 7.105.200(5).

Many public policy considerations drive these special rules for DVPOs. DVPOs serve the purpose of providing "quick and effective relief" to victims; therefore, current law directs courts to "consider the rebuttable presumption against delay" when considering a request for a continuance. RCW 7.105.200(5). Delaying DVPO proceedings not only denies petitioners access to the courts, " '[p]rolonged court proceedings [also] increase the risk of danger to a victim of domestic violence.' " *See Smith v. Smith*, 1 Wn. App. 2d. 122, 135-36, 404 P.3d 101 (2017) (referring to similar proceedings under the since-repealed Domestic Violence Protection Act (DVPA)) (quoting *Juarez v. Juarez*, 195 Wn. App. 880, 889, 382 P.3d 13 (2016)).

Hamilton appears to argue that the superior court abused its discretion when it refused to continue the hearing notwithstanding that he had evidence directly relevant to the underlying physical altercation and, further, that the superior court failed to explain its decision.

We are unpersuaded—from our review of this record, the superior court appropriately balanced the potential importance of Hamilton's additional evidence with the need for timely decisions in DVPO proceedings, and it gave ample explanation for its ruling. Following the testimony of the parties, the superior court outlined its view of the competing interests between Hamilton and Wold and the unique circumstances of the case. The superior court suggested that even if the matter was continued and additional potential evidence could be produced, much of that evidence would be in video form, and thus apparently unreviewable in the context of this type of hearing. Further, the superior court explained that the proceedings had been continued multiple times and, given the allegations of abuse and the involvement of a child, the superior court had

"real concerns" about any additional delay. VRP at 7. Under these circumstances and especially considering the public policy interest in expediting DVPO proceedings, we cannot say that the superior court's decision to deny Hamilton's motion to continue was manifestly unreasonable or based on untenable grounds. *See Smith*, 1 Wn. App. 2d at 135-36; RCW 7.105.200(5). Accordingly, we deny Hamilton's claim that the superior court abused its discretion.

B. NO VIOLATION OF DUE PROCESS

Hamilton appears to separately contend that the superior court's denial of a continuance denied him the opportunity "to preserve his constitutional due process right to confront the 'evidence' being presented against him" and "to cross-examine in civil proceedings." Reply Br. of Appellant at 8, 13. He argues that if the superior court had granted his motion, "it would have allowed him to timely and properly present evidence in support of his position and would confront and contradict [Wold's], so-to-speak, 'conclusions.' " Reply Br. of Appellant at 5.

However, as noted above, DVPO proceedings are special and a person does not necessarily have a right to cross-examination. *See Aiken v. Aiken*, 187 Wn.2d 491, 503-06, 387 P.3d 680 (2017). A respondent is only entitled to "be heard at a meaningful time and in a meaningful manner." *Id.* at 503. "[A] domestic viol[ence] protection petition supported by an affidavit, notice, a hearing before a judicial officer where parties may testify, a written order, the opportunity to revise the written order, the opportunity to appeal, and a one-year limitation on the order" is sufficient to comply with due process. *Id.* at 503 (concluding that the procedures in the DVPA (predecessor to chapter 7.105 RCW) protect the guarantees of due process required by *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

Here, Hamilton was able to submit his written petition and give lengthy testimony (including rebuttal testimony). Under these circumstances, Hamilton fails to establish that general principles of due process entitled him to anything more.

## II. FORM I-864

Hamilton largely supports his claim of error with arguments about the Form I-864, including that it required Wold to provide him an attorney to represent him before both the superior court and this court. We decline to consider any argument based on Form I-864.

Hamilton raised the Form I-864 for the first time in his postjudgment motion *after* he had already appealed the superior court's granting of Wold's DVPO. And Hamilton never separately appealed the denial of his postjudgment motion. Thus, any arguments about either the denial of Hamilton's postjudgment motion or the Form I-864 generally are outside the scope of this court's review. *See* RAP 2.5(a) ("appellate court may refuse to review any claim of error which was not raised in the trial court"); RAP 7.2(e) (generally, "a party may only obtain review of . . . [a] postjudgment motion by initiating a separate review"). But even if we were to substantively address the application and effect of Form I-864, there is no merit to Hamilton's position. Form I-864 does not require Wold to be "financially responsible" to Hamilton for his legal fees or to provide him an attorney. Am. Br. of Appellant at 11. Form I-864 only requires a sponsor "to provide support to maintain the sponsored [immigrant spouse] at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A); *see also Khan*, 182 Wn. App. at 799.

9

No. 58766-1-II

III. ATTORNEY FEES

Wold requests an award for attorney fees incurred during this appeal as a sanction for a frivolous appeal under RAP 18.9 or, in the alternative, as permitted by the DVPO statute, RCW 7.105.310(1)(j). We award Wold attorney fees under RCW 7.105.310.(1)(j).

RAP 18.1(a) allows us to award attorney fees on appeal if applicable law grants the party the right to recover attorney fees. And the DVPO, under subsection RCW 7.105.310(1)(j), vests the court with discretion to require the respondent in a protection order proceeding "to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." Here, we exercise our discretion under this statute and award Wold her attorney fees on appeal. Because we award fees under the DVPO, we do not address frivolousness under RAP 18.9.

CONCLUSION

We affirm the superior court's grant of Wold's DVPO against Hamilton and award attorney fees to Wold.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
CRUSER, C.J.

_____
MAXA, J.

10