IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| BRIANA PEDERSEN, | No. 86772-5-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ERIC PEDERSEN, | |
| Appellant. | |

BOWMAN, A.C.J. — Eric Pedersen appeals the superior court's refusal to issue a domestic violence protection order (DVPO) protecting him from his estranged wife, Briana Pedersen. Because the court did not abuse its discretion, we affirm.

FACTS

Briana and Eric[1] married in September 2013. They have two minor children. In early 2023, Briana petitioned for legal separation. And on February 5, 2024, she petitioned for a DVPO restraining Eric from contacting her and their children. In her petition, Briana said that she was "concerned about Eric's alcohol and cocaine use in the house and around the children," and that she was "very much afraid of Eric when he is under the influence because he is very unpredictable."

---

[1] For clarity, we refer to Briana Pedersen and Eric Pedersen by their first names. We mean no disrespect.

Briana also alleged several instances of physical violence. She said that in January 2020, Eric became "enraged," grabbed her by the neck, and "threw" her into a door. Then, in May 2022, Briana confronted Eric about his drug use while they were on vacation. Eric hit her in the face and pushed her to the ground, where she hit a coffee table. After Briana got up, Eric hit her in the face again, and "threw [her] like a ragdoll" into some furniture. The children were in an adjoining bedroom during the incident. Briana took photos of her injuries and attached them to her petition.

Briana also described an incident on January 8, 2024, where Eric yelled at their son during a televised University of Washington (UW) football game and blamed him for UW's loss. Briana said that "[t]he verbal and emotional abuse towards my son was disgusting and very upsetting for everyone who observed [it]," and that she did not confront Eric that day "in fear of . . . escalating his anger and abuse."

The next day, Briana went to Eric's office to confront him about withdrawals he made from their children's savings accounts intended for their education. In response, Eric headbutted her, shoved her head, and pinned her to the chair she was sitting in. Briana was able to call 911, but Eric "freaked out" and told her she could not do that to him at his job, so she hung up. Briana then ran to her car and called 911 nonemergency, and the operator told her to go to the police precinct or she would send a police officer. Briana went to the precinct and spoke with an officer about the incident. The officer took photos of her head,

but Briana said she "didn't give key verbiage of the attack to the officer in order to protect [Eric]" and "our financial security."

On February 5, 2024, a superior court commissioner issued an ex parte temporary DVPO, ordering Eric to have no contact with Briana and their two children, and set a hearing for February 21. At the hearing, the commissioner reissued the temporary DVPO but modified its terms, allowing Eric to have supervised visits with the children every other Saturday. The court set a hearing on Briana's petition for March 14, 2024.

On March 8, 2024, Eric moved to realign the parties and for a DVPO against Briana. Eric argued Briana was "actually the abuser and harasser, and [he] is the victim of domestic violence." Eric submitted a declaration, stating that "[c]ontrary to [Briana's] claims, I need a protection order to protect me from [her]." He said Briana "has a long and terrible issue with substance abuse and domestic violence against me," and referred to an incident on May 28, 2020, during which she became "violent." That incident resulted in Briana's arrest and a fourth degree domestic violence assault charge.[2]

At the March 14 hearing, the trial court heard Briana's petition for a DVPO, Eric's request for realignment, and Eric's motion for a DVPO. Briana testified at the hearing about the same incidents she described in her DVPO petition. Eric did not testify.

---

[2] The city later dismissed the charge against Briana.

On cross-examination, Eric's attorney questioned Briana about her May 2020 arrest for domestic violence assault. Briana testified:

> On the day in questioning, we had been arguing because my father was in the hospital dying of cancer, and my husband chose to go fishing with his friends and get drunk and when he came home, he was under the influence, and I had had drinks, and we were arguing. We went into an isolated area into my studio where we were arguing about it, and he was sitting . . . and I was standing, and he started taunting and baiting, and he's like, What do you want to do? You want to hit me? You want to hit me? Will it make you feel better? And it was just right at the end, so I popped him in the cheek.

Eric's attorney asked Briana if that was the only time she ever physically hit Eric, and Briana replied, "I have tried to defend myself from my husband." After more questioning, Briana admitted there "has been other times that we have had physical altercations."

The court found Briana's testimony credible, and it issued a DVPO protecting her and the children from Eric. But the court refused to issue Eric a DVPO. It concluded insufficient evidence supported his claim that Briana committed domestic violence:

> I saw [Briana] trying to qualify [her hitting Eric] as, I was defending myself. I forget the exact phrase she used. I think it can be explored . . . at a later date. Right now, I don't feel like I have sufficient information.
> So if [Eric] wants to come back before the Court, I think that's perfectly — that's absolutely within his right to do so.

The commissioner explained that while she was not currently making a finding that Briana engaged in domestic violence, "[t]hat doesn't mean that I wouldn't make the finding if I had more information."

On March 25, 2024, Eric moved a superior court judge to revise the commissioner's order, arguing that the commissioner erred by refusing to find that Briana committed domestic violence and that the court should realign the parties and vacate the DVPO restraining Eric. In the alternative, Eric argued the court should designate Briana as petitioner/counter-respondent and Eric as respondent/counter-petitioner and issue DVPOs protecting both parties from each other.

On May 6, 2024, the court adopted the commissioner's rulings, orders, and judgments and denied Eric's motion for revision. Eric appeals.

ANALYSIS

Eric argues the court abused its discretion by refusing to issue a DVPO protecting him from Briana. We disagree.

When reviewing an order on revision, we look to the superior court's decision, not the commissioner's. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). And we review a court's decision to deny a request for a protection order for an abuse of discretion. *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). We defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009).

Under RCW 7.105.225(1)(a), a court must issue a DVPO if it finds by a preponderance of the evidence that the petitioner has been the subject of domestic violence. "Domestic violence" includes "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault." RCW 7.105.010(9).

Here, the trial court determined that Eric failed to show by a preponderance of the evidence that Briana engaged in domestic violence. While Briana testified that she struck Eric once and that their relationship involved "other . . . physical altercations," she also suggested that she acted in self-defense. So, the court concluded that sufficient evidence did not currently support issuing a DVPO, but invited Eric to petition for a DVPO if he wanted to more fully develop the record. That ruling does not amount to an abuse of discretion.

Still, Eric argues the court erred because he testified in his declaration that Briana assaulted him in May 2020 and that there was an "ongoing pattern of physical assaults." And he points to Briana's arrest and criminal assault charge as corroborating evidence. But the court explained that it had "concerns about [Eric's] credibility," and noted that the assault charge against Briana was dismissed.

Because the trial court's ruling was not manifestly unreasonable or based on untenable grounds, it did not abuse its discretion by refusing to issue Eric a

DVPO.[3]

Briana asks for attorney fees on appeal under RCW 7.105.310(1)(j). We may award attorney fees where allowed by statute, rule, or contract. *Aiken v. Aiken*, 187 Wn.2d 491, 506, 387 P.3d 680 (2017). Under RCW 7.105.310(1)(j), a court may require the respondent "to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." We award Briana attorney fees and costs subject to compliance with RAP 18.1.[4]

We affirm the court's order on revision adopting the commissioner's rulings and DVPO restraining Eric.

_____, ACJ

WE CONCUR:

_____          _____

---

[3] Citing *Harke v. Harke*, 29 Wn. App. 2d 866, 543 P.3d 829 (2024), Eric also argues the court must either realign the parties or issue a temporary order protecting a respondent when it determines by a preponderance of the evidence that a petitioner engaged in domestic violence. But the court did not find by a preponderance of the evidence that Briana engaged in domestic violence. So, *Harke* does not apply.

[4] Eric asks for attorney fees for the first time in his reply brief. "An issue raised and argued for the first time in a reply brief is too late to warrant consideration," so we do not consider his request. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).