FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 DEC 10 AM 8: 50

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Parenting and Support of E.J.S., a minor child. | No. 77854-4-I |
| BRIAN MICHAEL RIBNICKY, | |
| Appellant, | |
| and | |
| | UNPUBLISHED OPINION |
| KATI J. SOTANIEMI, | |
| | FILED: December 10, 2018 |
| Respondent. | |

VERELLEN, J. — Brian Ribnicky challenges various provisions of the parenting plan and child support order entered in this parentage action. The appeal mainly revolves around the court's imposition of limitations on Ribnicky's decision-making authority under RCW 26.09.191 and Kati Sotaniemi's failure to attend or testify at trial. We affirm.

## FACTS

Ribnicky and Sotaniemi have one child in common, E.J.S. Ribnicky and Sotaniemi never married. On September 27, 2016, Ribnicky brought this parentage action to establish a parenting plan and child support for E.J.S.

Prior to trial, Jennifer Wheeler, a parenting evaluator, interviewed and evaluated both parties. During trial, Ribnicky successfully offered Wheeler's evaluation notes into evidence. Wheeler's notes documented an incident from March 2015 when Ribnicky, Sotaniemi, and E.J.S. were on vacation in Florida. Ribnicky reported to Wheeler that during the trip, "he spanked his son to discipline him for biting him."[1] Ribnicky reported "drinking half a bottle of champagne, six beers, and some wine" prior to the incident.[2] Based on a history of alcohol abuse, Wheeler diagnosed Ribnicky with moderate alcohol use disorder.

Sotaniemi reported to Wheeler she did not remember how much Ribnicky drank prior to the incident, but "it was a lot."[3] Sotaniemi reported to Wheeler that E.J.S. bit Ribnicky, and Ribnicky hit him. "I tried to protect him[.] [T]hen [Ribnicky] attacked me. . . . I was covered in bruises all over. . . . [H]e wouldn't let us leave."[4] The notes included other incidents of Ribnicky's aggressive physical conduct causing fear to Sotaniemi. At trial, Sotaniemi offered, and the court admitted Exhibit 118, a photograph of herself with bruises on her arms and chest. Sotaniemi reported to Wheeler that she and E.J.S. left the hotel the next morning. She also reported that Ribnicky "start[ed] sending emails and texts begging us to

---

[1] Ex. 69 at 367.
[2] Id.
[3] Ex. 70 at 388.
[4] Id.

2

come back."[5] At trial, Sotaniemi offered, and the court admitted Exhibit 106, a copy of the e-mails between Sotaniemi and Ribnicky following the incident.

The court also heard testimony from Ribnicky. Ribnicky characterized the March 2015 incident as parental discipline rather than domestic violence or abuse.

On September 15, 2017, the court entered a parenting plan and child support order. In the parenting plan, the court imposed RCW 26.09.191 restrictions on Ribnicky's decision-making authority. The court found "Brian Ribnicky has a history of domestic violence as defined in RCW 26.50.010(1),"[6] "Brian Ribnicky has assaulted someone causing grievous physical harm or fear of such harm," and "Brian Ribnicky has a long-term problem with drugs, alcohol, or other substances that gets in the way of his ability to parent."[7] In finding a history of domestic violence and an assault, the court noted that the evidence supporting the finding "include[ed] without limitation Exhibit 106, Exhibit 118, and [Ribnicky's] credibility issues when he was cross-examined regarding these matters."[8]

On November 29, 2017, after granting each party's motion for reconsideration as to their income for purposes of child support, the court entered

---

[5] Id.

[6] Clerk's Papers (CP) at 693. Although the form document containing the court's finding cites RCW 26.50.010(1), which provides the definition of "courts," both parties recognize section (3) defining "domestic violence" applies. Resp't's Br. at 13-14; Reply Br. at 13.

[7] CP at 693.

[8] CP at 690.

the final parenting plan. In the final parenting plan, the court included RCW 26.09.191 restrictions on Ribnicky's decision-making authority.

Ribnicky appeals.

## ANALYSIS

### I. Evidentiary Challenges

Ribnicky contends the trial court erred in admitting certain evidence it relied on to impose RCW 26.09.191 limitations on his decision-making authority.

RCW 26.09.191(6) provides, "In determining whether any of the conduct described in this section has occurred, the *court shall apply the civil rules of evidence*, proof, and procedure."[9]

Ribnicky argues we should review his evidentiary challenges de novo because the trial court misinterpreted section (6) when it admitted certain evidence contrary to the civil rules of evidence. But we review a trial court's decision to admit or exclude evidence for abuse of discretion.[10]

*A. Notes of Parenting Evaluator*

Ribnicky argues the court improperly admitted the testimony and notes of the parenting evaluator, Jennifer Wheeler, in violation of ER 802.

Under ER 802, "[h]earsay is not admissible except as provided by these rules, by other court rules, or by statute." "'Hearsay' is a statement, other than one

---

[9] (Emphasis added.)
[10] Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668, 230 P.3d 583 (2010).

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[11]

Ribnicky claims Wheeler's testimony constituted hearsay because she "relayed unsworn statements that had been offered by the Mother during the evaluator's investigations."[12]

Ribnicky fails to provide any specific citations to the record where the parenting evaluator relayed Sotaniemi's unsworn statements. A review of the record reveals Wheeler's testimony focused on her recommendations concerning the parenting plan rather than hearsay statements. We are not obligated "to comb the record" where counsel has failed to support arguments with citations to the record.[13]

Ribnicky also contends the court improperly admitted and considered Wheeler's testimony and notes, in violation of ER 705.

Under ER 703, an expert may rely on inadmissible facts and data to form an opinion. ER 705 allows the court to admit such evidence to show the basis for an expert's opinion. "But ER 705 is not a mechanism for admitting otherwise inadmissible evidence. An expert's use of the written reports of absent witnesses is not substantive evidence; they are admissible solely to show the grounds upon which the testifying expert's opinion is based."[14]

---

[11] ER 801.

[12] Appellant's Br. at 10.

[13] See In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998).

[14] In re Welfare of J.M., 130 Wn. App. 912, 924-25, 125 P.3d 245 (2005).

5

Ribnicky claims the court violated ER 705 because it considered Wheeler's testimony and notes as substantive evidence of domestic violence. Even accepting Ribnicky's argument as to Wheeler's testimony, the interview notes are different.

"Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal."[15] Ribnicky cannot complain the trial court improperly admitted or considered Wheeler's notes when he offered Wheeler's notes containing Sotaniemi's allegations into evidence without restriction and without requesting a limiting instruction.[16]

During closing argument, Ribnicky vaguely suggested Wheeler's testimony could not serve as the basis for the domestic violence finding without direct testimony from Sotaniemi. Ribnicky's statements during closing argument were not in the form of an objection, and he did not specifically state the ground of an objection. It is not clear the argument even applied to Wheeler's notes. A statement raised for the first time in closing argument does not qualify as a timely "objection" under ER 103(a)(1).

---

[15] Grange Ins. Ass'n v. Roberts, 179 Wn. App. 739, 774, 320 P.3d 77 (2013).

[16] See Report of Proceedings (RP) (Aug. 15, 2017) at 169-70; see ER 105 (a party must request a limitation on the scope of evidence being admitted).

We deny Ribnicky's challenge to the admission and consideration of Wheeler's notes.

### B. *Exhibit 118 and 106*

Ribnicky contends the court improperly admitted Exhibit 118, two photographs of Sotaniemi with extensive bruises on her arms and chest, in violation of ER 901 and 802. Ribnicky also argues the court improperly admitted Exhibit 106, a series of e-mails between Ribnicky and Sotaniemi, in violation of Ribnicky's due process rights and the confrontation clause.[17]

We do not need to address whether the court properly admitted either exhibit. Even assuming an abuse of discretion, the outcome is the same. Wheeler's notes contained evidence of Sotaniemi's allegation that Ribnicky "attacked" her in Florida and that, as a result, she "was covered in bruises all over."[18]

## II. Cross-Examination

Ribnicky argues his due process rights were violated because Sotaniemi was absent from trial and unavailable for cross-examination.

"Due process is a flexible concept; the level of procedural protection varies based on circumstance."[19] "Due process may require cross-examination even in a

---

[17] We note that Ribnicky does not provide any compelling authority that the confrontation clause has any application in this setting.

[18] Ex. 70 at 388.

[19] Aiken v. Aiken, 187 Wn.2d 491, 501, 387 P.3d 680 (2017) (citing Matthews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

civil proceeding where the confrontation clause is not at issue."[20] In <u>Matthews v. Eldridge</u>, the United States Supreme Court provided a balancing test to determine the level of due process protection required in a particular situation.[21] Under this test, we consider:

> (1) [T]he private interest impacted by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government interest, including the additional burden that added procedural safeguards would entail.[22]

Ribnicky relies on <u>Aiken v. Aiken</u>[23] to argue he was entitled to cross-examine Sotaniemi concerning her allegations of domestic violence. There, the father sought to cross-examine his daughter at a protection order hearing concerning her allegations of abuse. Our Supreme Court acknowledged, "Cross-examination is a powerful instrument in eliciting truth or discovering error in statements" but ultimately determined the father was not entitled to cross-examine his daughter under the <u>Matthews</u> balancing test.[24]

Here, Ribnicky is seeking to cross-examine his wife concerning her allegations of domestic violence. Unlike <u>Aiken</u>, Ribnicky never sought to cross-examine Sotaniemi. At the start of trial, Sotaniemi's counsel informed the court

---

[20] <u>Id.</u>

[21] 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[22] <u>Aiken</u>, 187 Wn.2d at 501-02 (quoting <u>Matthews</u>, 424 U.S. at 335).

[23] 187 Wn.2d 491, 387 P.3d 680 (2017).

[24] <u>Id.</u> at 505.

that Sotaniemi would not be attending trial. Ribnicky did not object to Sotaniemi's absence, he did not seek to compel her attendance under CR 43, and he did not ask to shorten time to compel her attendance. We conclude Ribnicky failed to preserve this issue for appeal.

Ribnicky also argues the trial court should have drawn an adverse inference from Sotaniemi's absence and lack of testimony. He relies on Smith v. Smith, where this court acknowledged, "Once a witness in a civil suit has invoked his Fifth Amendment privilege [against self-incrimination], the trier of fact is entitled to draw an adverse inference from his refusal to testify."[25]

Here, Sotaniemi did not invoke her Fifth Amendment right against self-incrimination. Rather, she simply choose not to attend trial. Ribnicky never objected to her absence. Smith does not apply to these circumstances. Ribnicky fails to provide any other authority to support his argument.

Ribnicky also seems to contend his due process rights were violated because he did not have notice that Sotaniemi would seek restrictions under RCW 26.09.191. But the pretrial conference order identifies RCW 26.09.191 as an issue to be decided at trial.

We conclude Ribnicky's due process rights were not violated by Sotaniemi's absence.

---

[25] 1 Wn. App. 2d 122, 131, 404 P.3d 101 (2017).

III. Substantial Evidence

Ribnicky contends substantial evidence did not support the trial court's finding of a history of domestic violence and resulting RCW 26.09.191 restrictions.

We review a trial court's ruling on the provisions of a parenting plan for abuse of discretion.[26] We review a trial court's findings of fact under a substantial evidence standard.[27] "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted."[28]

RCW 26.09.191(1) is a mandatory provision requiring the trial court to prohibit mutual decision making if the court finds that a parent engaged in "a history of domestic violence as defined in RCW 26.50.010(3) . . . or an assault . . . that causes grievous bodily harm or the fear of such harm."

RCW 26.50.010(3) provides three alternative definitions of "domestic violence":

> (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.

---

[26] Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

[27] Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

[28] In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

This court has acknowledged the term "'a history of domestic violence'" is meant to exclude "'isolated, de minimis incidents which could technically be defined as domestic violence.'"[29]

Here, the court found Ribnicky has a history of domestic violence as defined in RCW 26.50.010(3), and that he assaulted someone, causing grievous physical harm or fear of such harm.

We conclude there is sufficient evidence of "a history of acts of domestic violence as defined in RCW 26.50.010(3)" including one "assault" and several incidents revealing "the infliction of fear of imminent physical harm, bodily injury or assault."[30]

First, the record contains evidence of Ribnicky assaulting Sotaniemi in March 2015 during a family vacation in Florida. As to the Florida incident, Ribnicky testified, "[E.J.S.] was on both, both my arms and he was biting my arm continuously, so I screamed, No, and then I tapped his butt with the remote three times."[31] He testified that he tapped E.J.S. "very gently on his butt" and that Sotaniemi "blew it out of proportion."[32] In Wheeler's notes, offered by Ribnicky during trial, Sotaniemi reported to Wheeler that E.J.S. bit Ribnicky, and Ribnicky

---

[29] In re Marriage of C.M.C., 87 Wn. App. 84, 88, 940 P.2d 669 (1997) (quoting 1987 Proposed Parenting Act, Replacing the concept of child custody, Commentary and Text 29 (1987)).

[30] Because we affirm the finding of a history of domestic violence as defined in RCW 26.50.010(3), we need not address the alternative basis for .191 restrictions based on grievous bodily injury or fear of grievous bodily injury.

[31] RP (Aug. 15, 2017) at 49.

[32] Id.

hit him. "I tried to protect him[.] [T]hen [Ribnicky] attacked me. . . . I was covered in bruises all over. . . . [H]e wouldn't let us leave."[33]

During trial, Ribnicky generally denied he was ever physically abusive to Sotaniemi. On direct examination, with regard to the Florida incident, Ribnicky's attorney asked whether he touched or grabbed Sotaniemi. Ribnicky answered, "I didn't grab her or anything,"[34] apparently referring to the Florida incident. In Ribnicky's interview with Wheeler, Ribnicky acknowledged "that each of them had engaged in *a* minor incident of physical aggression in their relationship (e.g., grabbing the other person), but no injuries."[35] But the trial court found Ribnicky had "credibility issues when he was cross-examined" concerning the "acts of domestic violence and assault."[36]

Second, the record contains evidence of Ribnicky's general pattern of aggressive conduct. Sotaniemi told Wheeler that Ribnicky "had broken things, punched holes in the wall."[37] Sotaniemi also told Wheeler that Ribnicky "was very aggressive but [the Florida incident] was the first time he physically hurt [Sotaniemi]."[38] Apparently, as to the Florida incident, Sotaniemi indicated "that she

---

[33] Ex. 70 at 388.

[34] RP (Aug. 15, 2016) at 51.

[35] Ex. 69 at 381 (emphasis added).

[36] CP at 690.

[37] Ex. 70 at 389.

[38] Id.

12

had been injured as a result of a conflict (e.g. cut/bruise)."[39] But separately, Sotaniemi endorsed that Ribnicky "had engaged in physical aggression during their relationship (e.g. throwing something at her, twisting her arm, pushing, grabbing)."[40]

Third, the record contains evidence of two specific incidents of Ribnicky's aggressive conduct when drinking. In early 2014, after E.J.S. was born, while Sotaniemi was recovering from surgery at the hospital, Ribnicky was drinking and "punching the walls in the room."[41] And in February 2015, Ribnicky was "really drunk" and upset about a letter he had received from the homeowners' association. He told Sotaniemi he was "going to go and show them how it is done in Jersey."[42] Sotaniemi tried to stop him, and Ribnicky threatened that if she tried to stop him or tell anyone, "[she] will somehow suffer for it."[43]

Finally, the record also contains evidence consistent with Sotaniemi's imminent fear of Ribnicky's aggressive conduct when drinking. As to the February 2015 incident, Sotaniemi reported to Wheeler she "thought about calling the police, but [she] knew the moment he was out of jail, [Ribnicky] would hurt [her]."[44] Sotaniemi told two people in the building, but she "made them swear they wouldn't

---

[39] Ex. 70 at 404.

[40] Id. at 387.

[41] Id.

[42] Id. at 388.

[43] Id.

[44] Id.

let [Ribnicky] know [she] was the one who had ratted him out, because I was afraid of what he might do."[45] In August 2015, after Sotaniemi and Ribnicky had separated, Ribnicky came to Sotaniemi's house "really drunk."[46] Sotaniemi told Wheeler, "I had to be careful. I didn't want him to get aggressive."[47] She also said, "I am genuinely scared of this guy."[48] On another occasion, Ribnicky threatened to "come to the house to 'protect' [E.J.S.]."[49] Sotaniemi told Wheeler she and her husband were "genuinely scared."[50]

In summary, the record contains evidence of a specific assault, occurring in March 2015, when Ribnicky restrained Sotaniemi, resulting in bruises. The record also contained evidence of other incidents, including Ribnicky yelling at Sotaniemi, Ribnicky punching walls, and Ribnicky throwing things at Sotaniemi. Additionally, the record contains evidence of Sotaniemi's continuing fear of Ribnicky based on these incidents and his tendency to be aggressive when drinking.

Ribnicky argues that Sotaniemi's alleged fear was unreasonable, specifically relying on Dr. Wheeler's testimony. During trial, on direct examination, Ribnicky elicited the following testimony from Wheeler concerning Sotaniemi's fear:

---

[45] Id.
[46] Id. at 389.
[47] Id.
[48] Id.
[49] Id. at 390.
[50] Id.

Q:     You also stated in your report that this incident, quote/unquote, has significantly contributed to Mother's ongoing fear of Father's propensity for future acts of physical aggression. Although available data indicate that the current severity and active (inaudible) physical violence, although Mother's subject[ive] perception of Brian's risk, threat, is much higher and has contributed to the current restrictions to Father's parental access. So can you explain (inaudible)?

A:     Yes. In this—this piece that you're discussing here, I think, is very important, or at least at the time of my evaluation was a very important dynamic that—that I was seeing in this family was this disconnect between what my perception—based on the objective data of what had actually occurred in this family, my perception of what level of risk that posed for this family currently, relative to the amount of fear that Mother was currently reporting, which was much higher than my perception, my analysis, of the current risk. And I think that's very important because it's not—it's not that Mother has— there's no validity to Mother's fears, right? *She did experience an incident of violence that was very frightening to her. It's not that she doesn't have any basis for her fears and anxiety. She clearly does.* It's just that the difference, the—the degree of her fear is much, much greater than the current risk that is posed to her.[51]

Contrary to Ribnicky's argument on appeal, Wheeler did not conclude Sotaniemi's fear was unreasonable. Although we do not rely on Wheeler's testimony, her acknowledgment of Sotaniemi's fear is consistent with the definition of "domestic violence," specifically, the "infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."[52]

---

[51] RP (Aug. 15, 2017) at 150-51 (emphasis added).
[52] RCW 26.50.010(3).

Therefore, even though Wheeler did not conclude there was a pattern of domestic violence, neither we nor the trial court are bound by Wheeler's opinion.[53] The record contains substantial evidence of an assault and the infliction of fear of imminent physical harm based on Ribnicky's separate multiple incidents of aggressive conduct. This evidence supports the trial court's finding of a history of domestic violence. In turn, this finding supports the court's imposition of mandatory restrictions on Ribnicky's mutual decision-making authority under RCW 26.09.191(1).[54]

Ribnicky also argues the trial court should have given credence to his testimony. But under the substantial evidence standard, we must not "substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility."[55] Ribnicky is asking this court to reweigh the evidence and reassess his credibility.

IV. Authority to Impose Restrictions

Ribnicky argues the trial court lacked the authority to impose certain restrictions.

---

[53] The trial judge is "not bound by [guardian ad litem] recommendations." In re Marriage of Magnuson, 141 Wn. App. 347, 350-51, 170 P.3d 65 (2007); In re Marriage of Swanson, 88 Wn. App. 128, 138, 944 P.2d 6 (1997).

[54] The trial court's list of "[r]easons for putting limitations on a parent (under RCW 26.09.191)" expressly includes the alternative reason that "Brian Ribnicky has a long-term problem with drugs, alcohol, or other substances that gets in the way of his ability to parent." CP at 693. Ribnicky does not assign error to this alternative basis for the .191 restrictions.

[55] Greene v. Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

As previously mentioned, we review a trial court's ruling on the provisions of a parenting plan for abuse of discretion.[56]

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.[57]

And "[a] trial court wields broad discretion when fashioning a permanent parenting plan."[58]

Here, the trial court found "Ribnicky has a long-term problem with drugs, alcohol, or other substances that gets in the way of his ability to parent."[59] As a result, the trial court imposed the following conditions on him:

> Obtain a vehicle interlock device with facial recognition and Level 2 Premium account with Soberlink (Daily Monitoring) and submit vehicle interlock device test results directly to the Mother (via Soberlink in real time via text and email) prior to his residential time with the child . . . . *If the Father fails to provide the Mother with his vehicle interlock device test results at least two (2) hours prior to his parenting time, he shall not having parenting time with [E.J.S.].*[60]

And as a result of the court's finding of a history of domestic violence and an assault, the court required Ribnicky to "[e]nroll in and complete DV (perpetrator's) treatment with DV Dads from Wellspring Family Services as part of

---

[56] Katare, 175 Wn.2d at 35.

[57] Littlefield, 133 Wn.2d at 47.

[58] Katare, 175 Wn. 2d at 35.

[59] CP at 693.

[60] CP at 710 (emphasis added).

the curriculum. He shall sign all necessary authorizations for Wellspring to send compliance reports directly to the mother."[61]

A. *Ignition Interlock and Soberlink Monitoring*

Ribnicky argues the trial court violated his right to privacy when it required him to obtain a vehicle interlock device, Soberlink breathalyzer, and a Soberlink account.

Article I, section 7 of the Washington Constitution protects a person from being "disturbed in his private affairs . . . without authority of law." We review alleged article I, section 7 violations by determining "'whether the action complained of constitutes a disturbance of one's private affairs'" and "'whether *authority of law* justifies the intrusion.'"[62]

Assuming without deciding that requiring a vehicle ignition interlock and a Soberlink breathalyzer constitute a disturbance of Ribnicky's private affairs, authority of law justifies such an intrusion. Under RCW 26.09.191(3)(c), a court may "preclude or limit any provisions of the parenting plan" if one of the parents has "[a] long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions."

---

[61] Id.

[62] Blomstrom v. Tripp, 189 Wn.2d 379, 402-03, 402 P.3d 831 (2017) (emphasis added) (quoting State v. Surge, 160 Wn.2d 65, 71, 156 P.3d 208 (2007)).

Our Supreme Court has determined "that the legislature intended RCW 26.09.191(3) restrictions to apply only where necessary to 'protect the child from physical, mental, or emotional harm.'"[63]

Ribnicky does not challenge the court's finding that he "has a long-term problem with drugs, alcohol, or other substances that gets in the way of his ability to parent."[64] Rather, he contends the intrusions are not justified because they include monitoring during nonresidential time. But Ribnicky does not provide any authority that the court's broad authority to impose restrictions to protect the child may not extend beyond the specific hours of the parent's residential time.

We conclude the trial court did not violate Ribnicky's right to privacy when it imposed alcohol monitoring conditions as a condition of visitation. The court had the authority to impose such conditions to protect E.J.S. from physical, mental, or emotional harm resulting from Ribnicky's problem with alcohol.[65]

*B. Domestic Violence Perpetrator Treatment with DV Dads*

Ribnicky also argues the trial court lacked the authority to impose domestic violence perpetrator treatment.

---

[63] Chandola, 180 Wn.2d at 648.

[64] CP at 693.

[65] Ribnicky suggests the court misunderstood the nature of monitoring via ignition interlock and Soberlink as distinct from one another. He relies on the expert's recommendation of Soberlink monitoring alone to argue the court did not have the authority or intent to impose both restrictions. He misconstrues the court's comments, and he fails to cite any authority to support this proposition.

First, Ribnicky's briefing on this issue merely repeats his argument concerning substantial evidence. We addressed this issue above. Additionally, Wheeler's recommendation against imposing domestic violence restrictions does not limit the authority of the court once it finds a history of domestic violence.

Second, Ribnicky also appears to assume the court has the authority to impose domestic violence perpetrator treatment only upon entry of a protection order, but he provides no authority to support this proposition.

We conclude the trial court had the authority to require Ribnicky to attend domestic violence perpetrator treatment to protect E.J.S. from physical, mental, or emotional harm resulting from Ribnicky's history of domestic violence.

## V. Child Support

Ribnicky also challenges the trial court's calculation of both parties' income to determine child support.

As to the child support order, the court calculated Sotaniemi's income based on her 2016 W-2 and ordered Sotaniemi to submit her 2016 tax return on or before September 22, 2017. The court calculated Ribnicky's total gross monthly income at $15,452. This included $14,852 in wages and salary and $600 in interest and dividend income. The court calculated Sotaniemi's total gross monthly income at $18,625.

On September 22, 2017, Sotaniemi submitted her 2016 tax return, but she informed Ribnicky her accountant made a mistake and the return did not accurately reflect her 2016 income. Apparently, Sotaniemi's accountant

mistakenly used both her 2015 and 2016 W-2s to create her 2016 tax return. Sotaniemi informed Ribnicky that she would filed an amended return when her accountant returned from vacation.

On September 25, 2017, Ribnicky moved for reconsideration of various provisions of the parenting plan and the court's calculation of both parties' income. He asked the court to recalculate Sotaniemi's income based on her 2016 tax return. The court granted reconsideration on this issue and calculated Sotaniemi's total gross monthly income at $65,592. The court also found Sotaniemi was intransigent for not providing her 2016 tax return prior to trial. But the court expressed concerns "about the legitimacy of the most recent tax returns [Sotaniemi] filed with the court."[66]

Ribnicky also moved for reconsideration of the court's calculation of his income because "the court included the $600 for dividends while it was already included in his gross income in his 1040."[67] The court granted reconsideration on this issue and calculated Ribnicky's total gross monthly income at $14,852.

On November 8, 2017, Sotaniemi moved for reconsideration of the court's calculation of her income. Sotaniemi submitted evidence that the 2016 tax return she filed on September 22, 2017 was based on incorrect information. On December 7, 2017, the court again determined Sotaniemi was intransigent for "her

---

[66] CP at 865.
[67] CP at 737.

21

failure to disclose her 2016 tax return prior to trial" and imposed sanctions.[68] But the court granted her motion for reconsideration in part and reverted to the child support order from September 15, 2017.

We review the court's calculation of child support for abuse of discretion.[69]

A. *Sotaniemi's Income*

First, Ribnicky argues the trial court incorrectly calculated Sotaniemi's income because it failed to include Sotaniemi's 2016 stock grant.

Ribnicky primarily relies on In re Marriage of Ayyad, where this court determined the trial court erred in excluding the father's "exercised and cashed in" stock option in his income when it calculated child support.[70] The court's rationale in Ayyad relies on the fact that the father had converted the stock option to cash.

Here, Sotaniemi's 2016 earning statement shows only that she received a $94,629.32 "stock award spread."[71] And although Sotaniemi's 2016 W-2 appears to match up with her earning statement, the record does not address the nature of Sotaniemi's stock grant. Specifically, the record does not address whether Sotaniemi actually had possession of any stock or whether there are any restrictions upon Sotaniemi selling any stock actually delivered to her. Additionally, Ribnicky submits limited briefing to address whether a stock grant should be considered income to determine child support. He acknowledges that a

---

[68] CP at 1018.

[69] In re Marriage of Jess, 136 Wn. App. 922, 926, 151 P.3d 240 (2007).

[70] 110 Wn. App. 462, 469, 38 P.3d 1033 (2002).

[71] Ex. 23.

"stock spread award" is not the same thing as the stock option addressed in Ayyad, and he concedes this is an issue of first impression. His citations to out-of-state cases are unhelpful without comparison and analysis of the out-of-state child support statutes.

On this limited record and briefing, we decline to address Ribnicky's assignment of error concerning the trial court's calculation of Sotaniemi's income.[72]

*B. Ribnicky's Income*

Second, Ribnicky contends the trial court incorrectly calculated his income because it counted his dividend income twice.

Ribnicky's briefing and argument concerning this issue is factually vague. It is not clear from his citations to the record how he believes the court counted his dividend income twice.

On this limited record and briefing, we decline to address Ribnicky's assignment of error concerning the trial court's calculation of his income.

## VI. Fees on Appeal

Ribnicky seeks fees on appeal based on Sotaniemi's intransigence.

"A court may award one party attorney fees based on the other party's intransigence if the other party engages in foot-dragging and obstruction."[73]

---

[72] See Palmer, 81 Wn. App. at 153 ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

[73] In re Marriage of Pennamen, 135 Wn. App. 790, 807, 146 P.3d 466 (2006).

Here, the trial court found Sotaniemi was intransigent in failing to provide her 2016 tax return prior to trial and sanctioned Sotaniemi $5,000. Even though a party's intransigence in the trial court can support an award of fees on appeal,[74] we deny Ribnicky's request because Sotaniemi has not cross appealed the sanctions for intransigence in the trial court, and he fails to establish any further intransigence by Sotaniemi.

Sotaniemi seeks fees on appeal based on Ribnicky's intransigence.

"The party requesting fees for intransigence must show the other party acted in a way that made trial more difficult and increased legal costs, like repeatedly filing unnecessary motions or forcing court hearings for matters that should have been handled without litigation."[75] Although Ribnicky's arguments on appeal are not compelling, Sotaniemi fails to establish that Ribnicky has been intransigent. We deny her request.

Therefore, we affirm.

WE CONCUR:

---

[74] Mattson v. Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999).

[75] Pennamen, 135 Wn. App. at 807.

24